**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Leeann Marie Coghlan, Appellant,

v.

Phillip Anthony Coghlan, Respondent.

Appellate Case No. 2010-173766

————————

Appeal From Lexington County
Richard W. Chewning, III, Family Court Judge

————————

Unpublished Opinion No. 2012-UP-609
Heard September 11, 2012 – Filed November 14, 2012
Withdrawn, Substituted, and Refiled January 30, 2013

————————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

————————

John O. McDougall and Peter George Currence, of
McDougall & Self LLP, of Columbia, for Appellant.

J. Mark Taylor, of Moore Taylor & Thomas PA, of West
Columbia; and Katherine Carruth Goode, of Winnsboro,
for Respondent.

————————

**PER CURIAM**:  Leeann Marie Coghlan (Mother) appeals the family court's order granting her and Philip Anthony Coghlan (Father) a divorce.  Mother argues the family court erred in (1) granting Father sole custody of their children and setting the terms of visitation; (2) denying Mother's request for permanent periodic alimony; (3) valuing and apportioning the marital estate; and (4) denying her costs and attorney's fees.  We affirm in part, reverse in part, and remand.

In appeals from the family court, an appellate court's standard of review is de novo.  *Crossland v. Crossland*, 397 S.C. 406, 412, 725 S.E.2d 509, 513 (Ct. App. 2012).  We may find facts in accordance with our own view of the preponderance of the evidence.  *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011).  Yet we are not required to ignore the fact that the trial court was in a better position to evaluate the witnesses' credibility and assign comparative weight to their testimony.  *Sanders v. Sanders*, 396 S.C. 410, 415, 722 S.E.2d 15, 17 (Ct. App. 2011).  Thus, we will affirm the family court's factual findings unless the appellant satisfies this court that the preponderance of the evidence is against the finding of the family court.  *Chisholm v. Chisholm*, 396 S.C. 507, 510, 722 S.E.2d 222, 223 (2012).

1.     As to whether the family court erred in granting Father sole custody of the children and setting the terms of visitation, we affirm.  The controlling consideration in setting child custody and visitation is the child's welfare and best interest.  *High v. High*, 389 S.C. 226, 244, 697 S.E.2d 690, 699 (2010); *Smith v. Smith*, 386 S.C. 251, 272, 687 S.E.2d 720, 731 (Ct. App. 2009).  In determining the best interest of the child, the family court considers who has been the primary caretaker; the conduct, character, attributes, and fitness of the parents as they impact the child; the opinion of the guardian ad litem (the GAL); and the age, health, and sex of the children.  *Patel v. Patel,* 347 S.C. 281, 285, 555 S.E.2d 386, 388 (2001); *Reed v. Pieper*, 393 S.C. 424, 430, 713 S.E.2d 309, 312 (Ct. App. 2011).  The court must also "consider the child's reasonable preference for custody," giving weight to "the preference based upon the child's age, experience, maturity, judgment, and ability to express a preference."  S.C. Code Ann. § 63-15-30 (2010).

Mother failed to prove by a preponderance of the evidence that the family court erred in determining custody and visitation.  The parents' conduct, character, and fitness supports Father receiving sole custody.  The evidence shows Father has maintained a consistent approach to parenting the children.  Although Father's nonverbal conduct may have played some role in the girls' perception of Mother,

Mother's volatile conduct seems to be the proximate reason for the strain on the girls, despite her attempt to downplay its detrimental effect on them. Further, third party opinions indicated the girls were sometimes scared of Mother and relied on Father for stability. The GAL in particular was wary of the risk that Mother's character and conduct would hinder her ability to parent the children as they grow up. Lastly, the girls consistently and clearly expressed a preference that Father receive sole custody, and we see no reason to contradict the family court's finding that each child was of sufficient age, maturity, judgment, and ability to express that preference.

In addition, joint custody is not appropriate at this time. Mother testified joint custody was not in the girls' best interests, and her relationships with the girls are not guaranteed to improve simply by awarding her more time with them. All of the evidence in the record indicates the level of cooperation between Mother and Father necessary for joint custody is currently unlikely. *See Scott v. Scott*, 354 S.C. 118, 125-26, 579 S.E.2d 620, 624 (2003) (explaining that joint custody should be ordered "only under exceptional circumstances" because it "is usually harmful to and not conducive to the best interest and welfare of the children," especially "between estranged and quarrelsome" parents).

Lastly, we agree with the visitation set by the family court. The court granted Mother more visitation than the *pendente lite* order despite the children's wishes. The conditions in the final order further indicate that Mother has a remedy if the activities scheduled by Father for the girls become incommensurate with their needs or serve merely as a tool to deprive Mother of visitation.

2. As to whether the family court erred in establishing alimony, we reverse and remand. "An award of alimony . . . will not be disturbed absent an abuse of discretion. Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Myers v. Myers*, 391 S.C. 308, 313, 705 S.E.2d 86, 89 (Ct. App. 2011) (citation omitted). However, alimony should not "serve as a disincentive for spouses to improve their employment potential or to dissuade them from providing, to the extent possible, for their own support." *Id.* The family court must weigh thirteen factors "as it finds appropriate" in determining whether to award alimony. S.C. Code Ann. § 20-3-130(C) (Supp. 2011).

We disagree with the family court's finding that none of the applicable factors weighed in favor of granting permanent periodic alimony. While Mother may

have been intentionally under-employed during the summer, she did not do so based upon a desire to gain a "litigation advantage." She did so out of a desire to take care of the children during their summer vacation, while Father was at work. Further, the parties were married for thirteen years, with a high standard of living, and Father made four times as much as Mother. Although the family court reduced Mother's child support obligation and Mother may have opportunities to gain promotion, the record contains no competent evidence to determine the effect of the child support and alimony obligations on her ability to maintain a lifestyle near the party's pre-divorce standard of living. Lastly, the family court held it awarded Mother "rehabilitative alimony," described as Mother's absolved child support obligations that were previously held in abeyance and the temporary alimony she received from the *pendente lite* hearing. These items are not "rehabilitative alimony." *See Herring v. Herring*, 286 S.C. 447, 450, 335 S.E.2d 366, 368 (1985) (defining rehabilitative alimony as "alimony payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self support"). As a result, we remand for a finding of whether and how much alimony Mother should receive. *See Brandi v. Brandi*, 302 S.C. 353, 358, 396 S.E.2d 124, 127 (Ct. App. 1990) (remanding for reconsideration of alimony because of changes to equitable distributions and concerns with the family court's original alimony findings).

3.     As to whether the family court erred in valuing and apportioning the marital estate, we remand.[1] Mother specifically argues the family court erred in calculating the marital estate because it adopted a miscalculation of the equity in the marital residence admitted to by Father's forensic accountant. We disagree.

Family courts have broad discretion in valuing and apportioning marital property. *Lewis*, 392 S.C. at 393, 709 S.E.2d at 656; *Deidun v. Deidun*, 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct. App. 2004). Apportionment should reflect each spouse's contribution to the marital property's acquisition, giving weight to fifteen factors as

---

[1] We agree with the family court that Mr. Burkett's marital asset valuation was more credible than that provided by Mother's experts. Furthermore, the record contains only an incomplete transcript of Ms. Amos's testimony, and without more evidence, we cannot determine whether the court erred in rejecting Ms. Amos's suggestion to split Father's pension benefits using a percentage ratio. The family court may reconsider the method of apportioning Father's pension to the extent it would help provide an equitable apportionment of marital assets.

the court finds appropriate.  S.C. Code Ann. § 20-3-620(B) (Supp. 2011); *Crossland*, 397 S.C. at 415-16, 725 S.E.2d at 514-15.

Mother has failed to prove by a preponderance of the evidence that the family court erred in calculating the marital equity.  The family court adjusted the marital equity by adding the lien on the marital residence agreed to be taken by Father's parents.  Mother simultaneously received an increase in equity in the marital estate by receiving the interests of Father and Father's parents in the Delaware property.  This resulted in the 60–40 split approved by the family court.

At oral argument, Mother contended the family court erred in considering the lien taken by Father's parents and the equity received by Mother in the Delaware property because the lien and equity were non-marital.  However, we cannot consider this issue.  The record on appeal does not reveal a trial argument or motion to amend raising that issue, nor did Mother include such an argument in her appellant's brief.  *Cf. Barrow v. Barrow*, 394 S.C. 603, 615, 716 S.E.2d 302, 309 (Ct. App. 2011) (holding an argument not raised to the family court either at trial or in a motion to amend is not preserved for review); *Smith v. Smith*, 308 S.C. 372, 374, 418 S.E.2d 314, 316 (Ct. App. 1991) (same); *York v. Conway Ford, Inc.*, 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997) (holding a motion raising an argument should be in the record on appeal to preserve the argument for review); *Bochette v. Bochette*, 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct. App. 1989) (holding an appellant may not use oral argument as a vehicle to make arguments not made in the appellant's brief).

In light of the need to reconsider alimony, however, we remand for the family court to reconsider whether the 60-40 split was fair and equitable.  Mother provided the vast majority of the indirect contributions to the marriage as the primary caretaker of the children until the *pendente lite* order, and this factor must be considered.  *See Peirson v. Calhoun*, 308 S.C. 246, 251, 417 S.E.2d 604, 607 (Ct. App. 1992) ("[W]here the parties agree the husband would be the income producer and the wife would be a homemaker and companion and give up her career, such an arrangement may be considered to be an equal partnership of the spouses.").

4.     As to whether the family court erred in denying Mother costs and attorney's fees, we decline to address this issue in light of our other rulings.  The family court must reconsider whether to award costs and attorney's fees on remand.  *See Peirson*, 308 S.C. at 255, 417 S.E.2d at 609 (remanding attorney's fees issue for

reconsideration because the family court's decision on other remanded issues may affect the beneficial results factor in awarding attorney's fees).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**HUFF, THOMAS, and GEATHERS, J.J., concur.**